MURIEL ZUCKERMAN, Plaintiff, v CITY OF NEW YORK et al., Respondents; NEW YORK CITY TRANSIT AUTHORITY, Appellant, et al., Defendant.

First Department, February 15, 1979

## APPEARANCES OF COUNSEL

*Kenneth J. Chertoff* of counsel (*John A. Murray* with him on the briefs; *Alphonse E. D'Ambrose,* attorney), for appellant.

*Bernard Abel* of counsel (*Kevin Sheridan* with him of the brief; *Allen G. Schwartz, Corporation Counsel),* for City of New York, respondent.

*Nathan Cyperstein* of counsel (*Alvin P. Bluthman* with him

on the brief; *Gantman, Cyperstein & Peckman,* attorneys), for Royfost Co., Inc., respondent.

### OPINION OF THE COURT

SANDLER, J.

This is a negligence action to recover damages for injuries allegedly sustained by plaintiff when she fell on the sidewalk at or near a bus stop at the intersection of Third Avenue and 34th Street. As detailed in the plaintiff's bill of particulars, she tripped and fell in a break in the sidewalk described as 10 feet long, 6 inches wide, and 6 inches deep. The theory of liability advanced is that each of the defendants negligently failed in an alleged duty to maintain that area of the sidewalk in a safe condition and to inform passersby of its defective and unsafe condition.

In their answers, the defendants interposed cross claims against each other. As here relevant, Royfost Co., Inc. (Royfost), alleged to be an adjoining landowner, cross-claimed that any damages sustained by plaintiff not attributable to her own negligence were caused "by reason of the sole, active and primary * * * negligence and/or affirmative acts of omission * * * by the co-defendants, the City of New York, New York City Transit Authority, Harvey's Seafood House, Inc."

Similarly in its answer, the City of New York (City) cross-claimed "that if the plaintiff was caused damages as alleged in the plaintiff's complaint through negligence other than plaintiff's own negligence, said damages were sustained due to the negligent acts of omission or commission of the defendants above named."

Moving for summary judgment dismissing the complaint, the New York City Transit Authority (Authority) asserted in substance that it was under no duty to maintain and repair the public sidewalks, and that in any event the bus stop in question was not one used by its buses. Plaintiff urged in its response that there was an issue of fact as to whether the Authority used the bus stop at the time of the pertinent event.

Special Term (M. EVANS, J.), granted summary judgment and dismissed the complaint holding: "It is clear that said defendant [the Authority] was under no legal duty to correct a defective condition existing on the public sidewalk. New York City Charter, Section 2103".

No appeal was taken from the order entered on this decision.

Thereafter the Authority moved to dismiss the cross claims, contending in an attorney's affidavit that they involved the same legal issue determined by Special Term when it dismissed the complaint.

In its response the City claimed that under a leasing agreement with the City the Transit Authority was liable for any and all claims arising out of its operation of "Leased Property."

Royfost, in an affidavit submitted by its attorney, pointed out that its cross claim, unlike the dismissed complaint, was not limited to the theory that the Transit Authority was under a duty to maintain the sidewalk. The affidavit summarized testimony given by the plaintiff at a comptroller's hearing as follows: "She was about to take a bus at the corner midway between 34th and 35th Streets; a bus had closed its doors and a second bus was coming; and the second bus stopped to pick up passengers. As plaintiff prepared to enter the bus, her foot sank into mud at the curb and this happened because the bus did not stop at the curb * * * When plaintiff fell, her entire body landed in the roadway."

Special Term (Asch, J.), denied the Authority's motion for summary judgment relying on CPLR 1401, titled "Claim for contribution," which reads in pertinent part: "two or more persons who are subject to liability for damages for the same personal injury * * * may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought."

On this appeal the City has abandoned its reliance on the supposed written agreement of indemnification and has associated itself with the position advanced by Royfost.

The decisive circumstance here is that the cross claims, unlike the dismissed complaint, do not depend on the supposed duty of the Authority to maintain the sidewalk. The Authority's moving papers proceed entirely on the erroneous assumption that the issue presented is identical with that determined on its successful motion to dismiss the complaint, and offer nothing in addition that would support summary judgment.

The only factual showing in the papers submitted appear in

hearsay form in the affidavit of Royfost's counsel described above. Although that recital is vague with respect to critical details, we are not able to say on this record that there are not presented factual issues precluding summary judgment.

When a bus stops to pick up passengers, we think it fundamental that there is a duty of reasonable care to those who approach it for that purpose. Language arguably to the contrary in *McMahon v Surface Transp. Corp. of N. Y.* (272 App Div 202, 203) and *Sheridan v City of New York* (6 AD2d 125, affd 6 NY2d 765) relied upon in the dissenting opinion, seem to us clearly dicta in the light of the facts in those cases and not here controlling.

Nor do we agree with the thesis advanced in the dissenting opinion that the prior dismissal of the complaint mandates dismissal of the cross claims under the doctrine of "law of the case." Where, of course, a motion addressed to legal sufficiency of a pleading raises issues identical with those that would be raised by a motion addressed to the pleadings of other parties in the same lawsuit, there is a compelling interest in having the issues resolved at the same time by a single Judge. This, of course, would be most easily accomplished if the motion were addressed to all such pleadings. Lacking that, a Judge aware of the identity of the issues would be justified in suggesting and indeed directing that the motion be expanded to permit a single disposition.

The palpable undesirability of contradictory decisions by different Judges in a single lawsuit of issues going to the merits is such that there may well be force to the view that parties served with papers addressed to other pleadings should be required to participate. Certainly it would be in the interest of such parties to seek to avoid a decision that at the very least would be given great weight in a later motion addressed to another Judge.

We need not reach that question here because the issue presented by these pleadings is clearly different from that previously determined and we are persuaded that neither authority nor reason supports the extension of the "law of the case" doctrine to these circumstances. (Cf. *Greenberg v City of Yonkers,* 45 AD2d 314, affd 37 NY2d 907; Siegel, New York Practice, § 448.)

Accordingly, the order of the Supreme Court, New York County (ASCH, J.), entered January 9, 1978, denying New York City Transit Authority's motion for summary judgment dis-

missing all cross claims as to it, should be affirmed, without costs.

LUPIANO, J. (concurring). I concur in the rationale of Justice SANDLER, except that I express no view with respect to his dictum that "[t]he palpable undesirability of contradictory decisions by different Judges in a single lawsuit of issues going to the merits is such that there may well be force to the view that parties served with papers addressed to other pleadings should be required to participate."

The critical fact is that the relationship between the defendants with respect to their *Dole-Dow* cross claims is not governed in an absolute sense by the relationship between the plaintiff and each or any of the defendants regarding plaintiff's claim against said defendant or defendants. Obviously, under CPLR 3019 (subd [b]) a cross claim may be asserted between defendants for any cause of action at all, whether or not related in whole or in part to the plaintiff's main claim. Thus, the cross claim is an appropriate remedy which a defendant may invoke for the resolution of *Dole* rights with notice to the other parties that he wants liability apportioned. As aptly noted by Professor Siegel (Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3019:52, p 263) relevant to *Dole v Dow Chem. Co.* (30 NY2d 143) and its ramifications, the "rule of plaintiff's-complaint-determines should now be as dead as is the passive-active notion itself. Whether it ultimately be found that the division of responsibility between A and B is 50%-50%, 60-40, 10-90, or anything else, the kind of negligence or other fault alleged in the injured person's complaint should not be determinative. As long as the complaint alleges an incident, and it is factually possible that the incident involves more than one tortfeasor, any tortfeasor in the case should be permitted to seek a *Dole* apportionment against another tortfeasor, impleading the latter if he is not already a party. And *the version of the incident* which the court should give *prima facie* credit to, to the extent *the versions* offered by the plaintiff's pleading and that of a tortfeasor differ, is the one which would sustain a *Dole* impleader." (Emphasis supplied.)

Acknowledgment that *Dole* enunciates a doctrine of comparative negligence restricted to the relationships of tort-feasors' *inter se* warrants the following observations. The presence of cross claims asserted under the *Dole* doctrine, serves notice on a defendant that it is confronted not only by the plaintiff's

attack set forth in the complaint, but also by the separate attack of the codefendants. Thus, although the cross claim under *Dole* may be derived from the main claim in the complaint, it is not merely restricted to that main claim and may fairly embrace theories of liability different from that asserted in the plaintiff's claim. Relevant to this point is the lucid analysis of Professor Siegel regarding *Greenberg v City of Yonkers* (37 NY2d 907):"P successfully sued A and B on a warranty theory, which was tried first, and then, on a separately tried contribution cross-claim by A, B was found negligent. B contended that not having been found guilty of negligence to P, negligence could not be used as a predicate by A. The Court rejected this contention, holding that the theory of the main liability need not be the same as that of the liability over. We may interject that this would at least be so, as it was in *Greenberg,* when there is no inherent incompatibility in allowing the different bases. When P could have used as a main-claim ground the one exploited on the cross-claim, but elected not to, it is not incompatible to sustain it for the latter. Indeed, it would be inconsistent with the purpose of *Dole,* which is to assure the implementation of rights that tortfeasors have among themselves without regard to the caprices of the plaintiff, to permit the plaintiff, by withholding a theory from his main claim, to deny its use to a defendant on a contribution cross-claim." (Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, Pocket Part, CPLR C3019:53, p 28.)

An accident may involve the possibility of causation by concurrent acts of negligence which acts need not be similar in nature. Absent an inherent incompatibility between those acts, the fact that a plaintiff chooses not to sue for recovery based upon one of those acts or chooses to be nonsuited with respect to one of those acts, should not of itself foreclose the right of contribution for a tort-feasor within the purview of CPLR article 14 which codifies the tenets of the *Dole* case. Consideration of the pleadings and their interpretation, viewed against the aspect of notice and, where pertinent, the course and development of disclosure will, in a given case, dictate the existence of a right to contribution. The fact that a plaintiff may be nonsuited because one of the tort-feasors obtains summary judgment on a motion directed to the plaintiff with respect to the negligent act relied upon by plaintiff, at his option, may not serve of itself to forestall the other tort-

feasors from obtaining contribution under *Dole* based upon a negligent act other than the one relied upon by plaintiff. To hold otherwise is to place the plaintiff in "the driver's seat," the situation that existed prior to *Dole.* Such a result should not be countenanced.

Support for this analysis may be found in cases involving settlement or discontinuance by a plaintiff against one of several alleged tort-feasors. Only recently, the Appellate Division, Second Department, opined: "In most jurisdictions it has been held that a voluntary dismissal or nonsuit does not preclude a defendant's plea for affirmative relief, nor does it prevent a defendant from proceeding in the same action with his setoff, counterclaim, cross action, cross complaint, or other claim for affirmative relief. Thus a dismissal as to one of a number of defendants does not result in the dismissal of that defendant's claim for relief against the plaintiff or against a codefendant; *nor does it carry with it a dismissal of the claim interposed against such defendant by a codefendant (Amerman v. State,* 111 Okla. 174; 27 CJS, Dismissal & Nonsuit, Section 39)" *(Felice v St. Agnes Hosp.,* 65 AD2d 388, 392).

It is well recognized that there may be more than one proximate cause of an accident and that two or more parties by their separate and independent acts of negligence may furnish direct causes of a single injury to another person (see *Pellone v Stratford Tower,* 56 AD2d 647). A cause of action exists even though the parties acted independently of each other, and it is not necessary to show that they acted jointly or through some common purpose *(Burd v Bleischer,* 208 App Div 499; *Hancock v Steber,* 208 App Div 455).

To summarize, plaintiff sues defendants for negligence regarding the obligation to maintain the public sidewalk where she claims to have fallen. Defendant New York City Transit Authority succeeded in obtaining summary judgment *against plaintiff* dismissing the complaint with respect to this claim. Plaintiff in opposing such relief did not attempt to assert any other predicate for liability against the Transit Authority. Armed with this result, the Transit Authority now seeks, by way of CPLR 3212, to defeat the *Dole* cross claims of its codefendants and is met, in opposition, with a theory of its liability as an "active" tort-feasor, arising not out of the obligation to maintain the public sidewalk, but out of its failure to stand its bus at the curb to permit plaintiff to safely board the bus. For purposes of CPLR 3212 relief and within

the ambit of the pleadings, it cannot be concluded that the nonsuit of plaintiff on the sidewalk theory respecting the Transit Authority, of itself, mandates the nonsuit of the codefendants' cross claims against the Authority under *Dole v Dow* and CPLR article 14. The cause of action subsumed in the cross claims is predicated on negligence, the same generic theory as that of the main complaint. It is the particulars of the negligence, that is, the specific negligent acts relied upon to sustain recovery, which differ. Clarification of the particular acts of negligence relied on under the cross claims is obtainable by the panoply of procedural devices provided for in the CPLR—for example, bill of particulars, discovery and disclosure, etc. The critical feature is notice, that is, the affording to the opposing party a full chance to meet the particularized theory of negligence in his opposing papers. In seeking summary judgment dismissing its codefendants' cross claim, defendant Transit Authority relied *solely* on the principle that *any* cross claim against it is similarly based on the specific negligent act relied on by plaintiff, to wit, failure to properly maintain the bus stop sidewalk. No response was made by the Authority to the assertion by defendant Royfost Co., Inc., that plaintiff at a comptroller's hearing stated that as she "prepared to enter the bus, her foot sank into mud at the curb and this happened because the bus did not stop at the curb." Relying on this, Royfost ably argues that plaintiff's injury may be due in whole or in part to "the negligence of the Transit Authority or because the Transit Authority substantially contributed thereto. Its bus did not pull up to the curb, and plaintiff hastening to get a 'second bus after the doors of a first bus had closed, suffered a fall into the roadway. Whether New York City Transit Authority is liable for five percent, ten percent or ninety-five percent of any damages plaintiff may recover is not the issue in this case. The question is should the cross-complaints be dismissed, and the answer must clearly be no."

*Klinger v Dudley* (41 NY2d 362) supports this result. Prior to trial certain defendants, to wit, Jerry and Julius Dudley, were granted summary judgment dismissing the plaintiff's complaint as against them because of plaintiff's failure to comply with a conditional preclusion order. The Dudleys nevertheless remained in the case as third-party defendants pursuant to a codefendant's cross claim against them. Despite the fact that plaintiff could not recover against the Dudleys,

the jury returned a verdict of $300,000 against them and two others and apportioned their share of liability at 25% of that amount. The analogy with the present case is self-evident. Thus, despite the fact that plaintiff herein cannot recover against the Transit Authority, the Authority may properly remain in the action by virtue of the cross claims asserted against it. Summary judgment is on the merits and the granting of this drastic relief has the same legal consequences whether it proceeds from default, an order of preclusion, or a meritorious showing.

Finally, it is well recognized that on a motion for summary judgment, "[i]ssue-finding, rather than issue-determination, is the key to the procedure" (*Esteve v Abad,* 271 App Div 725, 727). As the granting of a summary judgment motion is the procedural equivalent of a trial, it is clear that such relief is a drastic remedy and should not be granted where there is any doubt as to the existence of a triable issue (see *Crowley's Milk Co. v Klein,* 24 AD2d 920; *Moskowitz v Garlock,* 23 AD2d 943). Defendant Transit Authority on this record is not entitled to summary judgment dismissing the cross claims against it.

FEIN, J. (concurring). I concur in the views expressed by Justice LUPIANO and in the result reached by the majority opinion, except with respect to the dictum expressed by Justice SANDLER which intimates that one party to an action should *be required to appear* with respect to an application for relief sought solely as against another party.

This is close to the position taken by the dissenters, who without authority, would foreclose the City from its right to continue with its cross claim against its codefendant the Transit Authority, merely because the City did not appear in opposition to the Authority's motion for summary judgment dismissing the complaint. The effect is to impose upon one defendant the unnecessary burden of submitting *opposition* to a motion by a codefendant to dismiss the complaint. The incongruity is obvious. One defendant would thereby be obliged to come to the defense of the complaint upon motion by a codefendant to dismiss, on pain of forfeiture of any rights against the moving codefendant under a cross claim for contribution or apportionment previously interposed in the action. There was, however, no obligation upon the City to appear in opposition to the Transit Authority's motion to dismiss. The fact that the City was served with the moving papers is not dispositive. Such service was apparently made merely to com-

ply with CPLR 2103 (subd [e]) which requires service of all papers on all parties who have appeared. The motion was not directed at the City's cross claim; nor was any relief sought as against the City. The Transit Authority could have easily sought dismissal of the cross claim when it moved for summary judgment dismissing the complaint. It chose not to do so.

Nor do the doctrines of law of the case, *res judicata* or collateral estoppel apply to preclude the City with respect to its cross claim, since the City, against whom no relief was sought on the original motion, was not in any way barred by the determination there rendered. The Transit Authority's original motion to dismiss the complaint did not raise in issue any liability under the cross claim. All that the court could have passed upon on that application was plaintiff's rights as against the Transit Authority. The order granting the Authority's motion for summary judgment specifically recognizes this in dismissing only the complaint and not the cross claim by the City. The county clerk's file contains the order of Mr. Justice MARTIN EVANS, granting the Authority's motion to dismiss the complaint. The proposed order which had been submitted by the Transit Authority included an ordering paragraph dismissing the complaint "and all cross-claims", against the Authority. Special Term, before issuance of its order, struck so much of the ordering paragraph as sought dismissal of the cross claim, thus clearly demonstrating that the motion before Justice EVANS raised only the sufficiency of the complaint, not the cross claim. The order thus conformed to the notice of motion, which sought only dismissal of the complaint.

Moreover, it is of significance here that the theory of liability over on the cross claim, founded upon the alleged negligent operation of the bus by the Transit Authority, is different from the basis of liability which had been asserted by plaintiff in alleging negligence by the Authority in maintaining the sidewalk area at the bus stop. All that the prior order decided was that the Authority was under no legal duty to correct an alleged defective condition on the sidewalk. Plaintiff never asserted any impropriety in the operation of the bus. Nor was the City at all obligated to come to the aid of plaintiff on that motion to advance its theory on which it sought to impose liability against the Authority under its cross claim, which, by virtue of the dismissal of the complaint, in effect survived as a third-party action.

The cases cited in the dissent are not to the contrary. *Tortora v La Voy* (54 AD2d 1036) held only that a defendant who opposed a motion to dismiss made by a codefendant had standing to appeal the order granting dismissal. In *Stein v Whitehead* (40 AD2d 89) after a jury verdict against both defendants, the trial court set aside the verdict against one defendant. Despite the absence of a cross complaint, it was held that the codefendant could appeal the dismissal because, by reason of the *Dole-Kelly** principle of apportionment, the defendant held liable was aggrieved by dismissal of the complaint against the codefendant after trial. *Flake v Van Wagenen* (54 NY 25) holds only that a defaulting defendant has no right to appeal the judgment entered upon his default. The remedy is to move to vacate the default. In *Engel v Aponte* (51 AD2d 989), the moving plaintiffs were held bound by unappealed prior orders granting summary judgment and dismissing the complaint. In *Abazoglou v Tsakalotos* (36 AD2d 516, app dsmd 29 NY2d 544) plaintiff was held bound by a prior order directing that he submit to an examination before trial in New York. It is plain that these cases are not authority for the proposition asserted in the dissent that there is an obligation on the part of one defendant to oppose a motion addressed to the complaint by a codefendant.

Contrary to the position assumed by the dissent, the doctrine of law of the case has no application to the cross claim by the City for liability over against the Transit Authority. The Practice Commentaries by Professor David D. Siegel (McKinney's Cons Laws of NY, Book 7B, CPLR C3019:20, p 230) take express note of the independent nature of the cross claim: "If the main action is dismissed, it need not carry down a counterclaim or cross-claim. The court would have discretion to retain either one for trial, as long as there is jurisdiction, even upon a dismissal of the main claim under CPLR 3211 or a summary judgment under CPLR 3212."

As applied here, the pleadings in the action quite clearly show the independent nature of the cross claim and the fact that liability is predicated upon a theory different from that relied upon by plaintiff. The complaint alleges liability predicated solely upon the failure of the City and the Transit Authority to properly maintain the sidewalk and street in a reasonably safe condition, free of defects, and in permitting

---

* *Dole v Dow Chem. Co.*, 30 NY2d 143; *Kelly v Long Is. Light. Co.*, 31 NY2d 25.

the curb area to remain in a dangerous, defective and unsafe condition. There is no claim alleged for negligence by the Authority in the operation of the bus. The cross claim by the City for liability over against the Transit Authority, however, is predicated on general allegations of negligence and seeks apportionment of responsibility under *Dole v Dow Chem. Co.* (30 NY2d 143, *supra).* Included within the compass of liability thus asserted in the cross claim is the negligence, if any, of the Transit Authority in the operation of the bus. This issue was never raised by plaintiff and, therefore, could not have been disposed of upon the prior motion by the Authority for summary judgment dismissing the complaint.

As acknowledged in the dissent, third-party liability is premised on a duty owed by the third party to the plaintiff *(Nolechek v Gesuale,* 46 NY2d 332, concurring opn of GABRIELLI, J.; *Barry v Niagara Frontier Tr. System,* 35 NY2d 629; *Rogers v Dorchester Assoc.,* 32 NY2d 553). As stated in *Rogers (supra,* p 564): "The rule of apportionment applied when two or more tort-feasors have shared, albeit in various degrees, in the responsibility by their conduct or omissions in causing an accident, *in violation of the duties they respectively owed to the injured person."* (Emphasis supplied.)

As *Barry* and *Rogers* both hold, the duty owed need not be the same as to each defendant. It is enough that a duty was owed to plaintiff, that it was breached and injury ensued. Apportionment follows, albeit the liability of each codefendant is premised on breach of a different duty. Nor is it at all dispositive that plaintiff predicated liability upon the breach by the Transit Authority of an alleged obligation to maintain the sidewalk and not upon the Authority's duty owed to properly and safely operate the bus. Although the dismissal may bar plaintiff on all theories as against the Transit Authority, that bar does not extinguish *nunc pro tunc* the duty owing by the Transit Authority to the plaintiff so as to destroy the rights of third parties, such as the City of New York, flowing from that breach of the Transit Authority's duty.

The position assumed by the dissent undercuts the very holding by the Court of Appeals in *Dole v Dow Chem. Co.* (30 NY2d 143, *supra).* The effect of the *Dole* apportionment is to afford a defendant the opportunity of interposing a claim for indemnity or apportionment against another party who may be jointly or concurrently responsible for plaintiff's loss. Apportionment or indemnity now turn on relative responsibility,

not on the choice by plaintiff of which tort-feasor is joined as a defendant in the action and charged with liability for the loss. The dissent, however, returns to the pre-*Dole* pattern, giving effect to plaintiff's election among potential tort-feasors where liability against one is premised upon a duty or theory of liability found to be without basis and a clear duty of care owed by that defendant to the plaintiff is ignored. Under *Dole,* a codefendant cast in liability is not barred from seeking contribution or indemnity by plaintiff's choice of defendants or theories of liability.

To hold otherwise is to destroy the City's substantive right to contribution and apportionment of responsibility under *Dole v Dow Chem. Co. (supra)* without any right or opportunity to defend. The dissent, in response suggests that if the City was in some way "dissatisfied with the adequacy of plaintiff's response, they should have submitted their own papers in opposition." The City, however, would have been in no position to tender opposition to the Authority's motion to dismiss a complaint which sought to impose liability against the Authority for failing to maintain the sidewalk. The City never contended that the Transit Authority had a duty to maintain the curb area. On this appeal, it predicates liability upon the negligence of the Authority in the operation of the bus, an issue which was not raised upon the Authority's motion to dismiss the complaint. *Greenberg v City of Yonkers* (37 NY2d 907, affg 45 AD2d 314), therefore, is dispositive of the issue raised here and is not distinguishable as the dissent suggests. The City had no real opportunity to contest the original motion, since the issue litigated therein had no bearing upon the *Dole* cross claim and since no relief was sought as against the City on that motion. Nor was there a default, as the dissent suggests, by either Royfost or the City on the prior motion, since no relief was sought, against them.

Nor do I agree with the dissent in concluding that there is no merit to the assertion that the bus driver *may have been* negligent in failing to stop closer to the curb. *Sheridan v City of New York* (6 AD2d 125, affd 6 NY2d 765) is not dispositive. That case concerned an appeal rendered following a jury trial. There the bus operator had closed its door and the bus had started when "decedent appeared and knocked on the door" and then fell under the moving bus, his foot having "tripped in a hole in the platform" maintained by the City. The court there found no duty of the bus company to exist since, on the

facts there presented, plaintiff had not been accepted as a passenger nor was he invited to board the bus. Here, the facts appear to establish that plaintiff was walking toward the bus to board when the accident occurred. Moreover, here we are confronted with a motion for summary judgment, not a determination after trial. It has been held that issue finding and not issue determination is the appropriate test upon such a motion. It is not the function of the court to determine the facts, but rather, to determine whether there arguably exists a factual issue *(Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395; *Falk v Goodman,* 7 NY2d 87; *Capelin Assoc. v Globe Mfg. Corp.,* 34 NY2d 338; *Esteve v Abad,* 271 App Div 725). Whether the factual situation here is sufficient to impose a legal duty upon the Transit Authority cannot be disposed of on this record. Determination of the existence of such a duty is primarily dependent upon the proof to be adduced at trial. Nor can I accept the factual determination alluded to by the dissent that the failure of the bus driver to pull up to the curb is insignificant, since the plaintiff would have had to pass over the defective curbstone to reach the bus no matter where the bus stopped. This is also a factual issue which should not be finally disposed of upon motion for summary relief. Whether or not plaintiff could have safely boarded the bus had the operator properly pulled up to the curb is strictly a factual matter to be determined upon the trial.

Accordingly, the order, Supreme Court, New York County (ASCH, J.), entered January 9, 1978, should be affirmed, without costs or disbursements.

MURPHY, P. J. (dissenting). In considering the merits of this appeal, we have taken judicial notice of the entire county clerk's file in this proceeding (Fisch, NY Evidence [2d ed], § 1065, p 602).

Plaintiff allegedly fell in the vicinity of 34th Street and Third Avenue while walking toward a bus on April 3, 1975. In her bills of particulars, she specifies that she tripped upon the curbstone in the area of the bus stop. The curbstone allegedly contained a depression approximately 10 feet in length, 6 inches in depth, and 6 inches in width. She sued the City, the owner of the abutting building (Royfost Co., Inc.) and the abutting tenant (Harvey's Seafood House, Inc.) for their negligence in permitting this unsafe condition to exist. The New York City Transit Authority was sued for its purported negligence in failing to provide a reasonably safe bus stop. In

generalized form language, each defendant cross-claimed against the other for an apportionment of responsibility and damages.

On a prior motion, the Transit Authority moved for summary judgment dismissing the action in chief against it on the ground that only the City (NY City Charter, § 2103) and adjoining owners (NY City Charter, § 230) were responsible for the repair and maintenance of curbs and sidewalks. The Transit Authority also emphasized that it did not have a bus stop on the northeast corner of 34th Street and Third Avenue, the site of the occurrence. Although the plaintiff's attorney opposed that motion, the City, Royfost and Harvey's (collectively "the three defendants") did not submit any papers in opposition to the motion. The court at Special Term, relying upon section 2103 of the New York City Charter granted the motion for the reason that the Transit Authority was under no legal duty to correct a defective condition existing in the public sidewalk. No appeal was ever taken from that original order.

Subsequently, the Transit Authority brought the instant motion to dismiss all the cross claims as against it on the basis of the original order. An attorney for the City stated in an opposing affirmation that, under a leasing agreement with the City, the Transit Authority was liable for all claims arising out of or in connection with the operation, management and control of "Leased Property". The City's attorney contended that the Transit Authority was thus responsible for maintaining the sidewalk at the bus stop in a reasonably safe condition.

Royfost's attorney submitted an opposing affirmation that summarized the plaintiff's testimony at a comptroller's hearing. The plaintiff's foot had allegedly sunk into mud at the curb as she was walking toward a bus stopped on Third Avenue. As a consequence, she tripped and fell. For the first time, counsel for Royfost advanced the alternative theory that the Transit Authority could be held liable for the failure of the bus driver to pull closer to the curb. Defendant Harvey's did not oppose the motion.

The court at Special Term denied the present motion on the ground that the Transit Authority might be liable for contribution under CPLR 1401, as codifying *Dole v Dow Chem. Co.* (30 NY2d 143).

A motion granting summary judgment is on the merits. A

judgment on the merits precludes the maintenance of a second action based upon the same transaction if the evidence and the issues in both are the same. The second action may not be maintained even if brought upon a different theory *(Eidelberg v Zellermayer,* 5 AD2d 658, 662, 663, affd 6 NY2d 815). As was previously mentioned, the original order granted summary judgment dismissing the main action as against the Transit Authority. By force of that original order, the plaintiff was barred from seeking recovery from the Transit Authority on any and all theories.

The more narrow question presented upon appeal is whether the three defendants were also bound by that original determination. When a court makes a legal determination in a case, that determination, if not appealed from becomes the "law of the case" and controls when the question which led to it is again presented in the same case (1 Carmody-Wait 2d, NY Prac, 2:64, p 76). This rule is primarily aimed at preventing the relitigation of the same legal issue in a case and the concomitant possibility of conflicting decisions on the same legal issue. The three defendants were served with papers on the original motion; therefore, they had an opportunity to oppose the motion. Although the original motion was not directly addressed to their cross claims, the three defendants should have recognized that the validity of their cross claims was inexorably intertwined with the validity of the main action against the Transit Authority. Third-party liability does not exist in the absence of a duty owed by the third-party defendant to the plaintiff *(Nolecheck v Gesuale,* 46 NY2d 332, concurring opn of GABRIELLI, J.).

In recent cases, other defendants have recognized this fact. Thus, where defendants have sought contribution from codefendants, the courts have granted defendants standing to appeal the dismissal of the main actions against their codefendants. *(Tortora v La Voy,* 54 AD2d 1036; *Stein v Whitehead,* 40 AD2d 89.) The doctrine of "law of the case" was formulated to avoid the very situation presented. A first Justice has found that no case lies against the Transit Authority, while a second Justice of co-ordinate jurisdiction has reached a contrary conclusion.

If, on the first motion, the three defendants were dissatisfied with the adequacy of plaintiff's response, they should have submitted their own papers in opposition. For example, at that time, they were aware of and could have advanced the

alternative theory, later advanced, for holding the Transit Authority liable, viz., the bus should have parked closer to the curb. Instead, the three defendants elected to default on the motion. By defaulting, they acquiesced in the legal determination that there was no basis for recovery against the Transit Authority (see *Flake v Van Wagenen,* 54 NY 25, 27). Until reversed, that original order conclusively established in this proceeding that the Transit Authority was not liable to the plaintiff, be it under a complaint in chief or a cross claim. *(Engel v Aponte,* 51 AD2d 989.) On the instant motion, the court at Special Term should have honored the order of a prior Justice of co-ordinate jurisdiction *(Abazoglou v Tsakalotos,* 36 AD2d 516, app dsmd 29 NY2d 544) and should have granted summary judgment dismissing the cross claims. It is true that the doctrine of law of the case has no binding force on appeal *(Martin v City of Cohoes,* 37 NY2d 162, 165). However since the time to appeal from the original order has expired, we should not disturb the holding therein on this appeal.

While the present dispute involves the doctrine of "law of the case", an analogous problem has been succinctly analyzed in the collateral estoppel area. (2A Weinstein-Korn-Miller, NY Civ Prac, par 1401.22, pp 14-81, 14-82): "The issue of collateral estoppel may be raised in other situations involving a joint tort-feasor's right to an apportionment of damages. Assume A and B are both involved in an accident in which P is injured. P sues A only. At the close of the trial the jury returns a special verdict in which it is concluded that A was not guilty of any negligence. P thereafter sues B. The judgment in favor of A in P's initial action does not bar B from impleading A to seek a *Dole* indemnification because B was not a party to the action. But what if in the case of P v. A, A had impleaded B? Is B collaterally estopped from impleading A and seeking an apportionment of damages in the case of P v. B? To resolve the question it must be decided whether the test enunciated in *Schwartz v. Public Admin. of Co. of Bronx* [24 NY2d 65] has been met. The Court of Appeals stated in *Schwartz* that 'there are but two necessary requirements for the invocation of the doctrine of collateral estoppel. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling.' If B, as third-party defendant in

the action of P v. A, had a full and fair opportunity to argue in his defense that A was responsible for P's injuries and no liability should attach to B, the doctrine of collateral estoppel should prevent A, if adjudged not guilty of any conduct subjecting him to liability, from being subject to a claim for contribution in the action of P v. B. Such result, however, is dependent upon B being afforded an opportunity in the case of P v. A to present his evidence of A's liability. Where B is prevented from presenting his evidence, then B cannot subsequently be bound by an adjudication in favor of A". Similarly, the City (B) relinquished its right to cross-claim against the Transit Authority (A) by permitting the dismissal of the action in chief against the Transit Authority upon the original motion.

In passing, two decisions of the Court of Appeals should be noted and distinguished. In *Klinger v Dudley* (41 NY2d 362), the Dudleys were in the proceeding as both defendants and third-party defendants. Prior to trial, the Appellate Division, Fourth Department, granted summary judgment to them in the main action as a result of plaintiff's failure to comply with a conditional preclusion order (40 AD2d 1078). At trial and on appeal, the Dudleys were held liable on the third-party complaint for their proportional share of damages. In *Klinger,* the plaintiff was precluded from giving evidence against the Dudleys while the cross claimant was not so bound as against them. However, in this proceeding, all parties were bound by the original determination that the plaintiff could not legally recover against the Transit Authority.

In *Greenberg v City of Yonkers* (45 AD2d 314, affd 37 NY2d 907), there was a trifurcated trial. On the first stage of the trial, evidence was submitted by the plaintiffs against defendant Cyanamid and certain other defendants on the theory of negligence and breach of warranty. The court granted the motion to dismiss the negligence action against Cyanamid since that cause was not litigated. The court later found that Cyanamid was not liable on the breach of warranty theory. However, at the second stage, Cyanamid was held liable on cross claims seeking contribution for its negligence. The Appellate Division noted that Cyanamid was properly held liable since the issue of negligence was not submitted to the jury in the first stage. The cross claimants were thus not estopped since they did not have an opportunity to litigate the negligence issue until the second stage (45 AD2d 314, 318). In affirming, the Court of Appeals stressed (37 NY2d 907, 909):

"Our affirmance should not be taken as approval of the trifurcation procedure utilized here by the trial court. It is preferable, and sometimes essential, that issues of liability be resolved at one stage of the trial." Analogously, the issue of the Transit Authority's liability to the plaintiff was presented on the original motion. That issue should have been resolved at that point rather than on a successive motion. Since the three defendants had the opportunity to contest that original motion, they should not complain on the instant motion that they were not bound by that prior determination.

Even if the various cross claims are now considered upon the merits, they must be dismissed. First of all, it should be observed that, upon appeal, the City no longer presses its original position that the Transit Authority is liable under the leasing agreement. Suffice it to say that it is quite difficult for the City to fit a "sidewalk" or a "curb" within even the broadest definition of "Leased Property".

Secondly, no statutes or cases are cited by the three defendants that would suggest that the Transit Authority is under any duty to repair a sidewalk or a curb in or near a bus stop. The responsibility for maintaining a sidewalk and curb falls primarily on the City and the abutting owner *(Metzroth v City of New York,* 241 NY 470; cf. *Tremblay v Harmony Mills,* 171 NY 598; NY City Charter, § 2603, subd c; § 2604; Administrative Code of City of New York, § 692a-4.0; 26 NY Jur, Highways, Streets, and Bridges, § 6, p 175).

The guiding principles in this area were succinctly stated in *McMahon v Surface Transp. Corp. of N. Y.* (272 App Div 202, 203-204): "The relationship of carrier and passenger may be implied from slight circumstances yet, before a duty of care toward a prospective passenger may be imposed upon the carrier the person of the passenger must be placed in some substantial sense in the custody of the carrier, either in the carrier's premises while waiting to take passage or upon his vehicle. The sidewalk at the southeast corner of Fordham Road and Grand Concourse, including the part thereof which constitutes the bus stop, is a public thoroughfare over which the defendant had no control or authority. The street is in no sense a passenger station for the safety of which defendant is responsible. It is a public way where one occupier has the same rights as every other occupier." The principles enunciated in *McMahon* apply with equal force to this plaintiff, a

prospective passenger who tripped and was injured on the public sidewalk.

Finally, we find no merit to the contention that the bus driver was negligent in failing to stop closer to the curb. Parenthetically, we observe that the thrust of this claim is different from the one initially advanced by the plaintiff against the Transit Authority. Nonetheless, we would find that CPLR 1401 is broad enough to sustain a cross claim for contribution based upon a different theory (*North Colonie Cent. School Dist. v MacFarland Constr. Co.,* 60 AD2d 685).

Viewing the evidence most favorably to the plaintiff, she tripped in a depression in a curbstone as she was walking toward a bus. In *Sheridan v City of New York* (6 AD2d 125, affd 6 NY2d 765), plaintiff's decedent, Hugh Sheridan, was injured on a pedestrian platform that served as a bus stop. As Sheridan walked toward the bus, the front door closed. Sheridan knocked on the door as it began to move, and at that moment, his foot tripped in a hole in the platform near the curbstone. As a result of the fall, he slipped under the moving bus. The Court of Appeals found that the appellant trustee of the Surface Transportation Corporation was not liable since the corporation did not maintain the platform. Furthermore, the court found that the appellant owed no duty to Sheridan since the latter had never been accepted as a passenger nor was he invited aboard the bus.

In line with *Sheridan,* it must again be stressed that the Transit Authority did not maintain the curb nor was the plaintiff in any way accepted as a passenger. Any discussion of whether the bus driver had notice of the depression in the curbstone would be irrelevant since the Transit Authority was under no duty to repair it. Had the depression been in the street, rather than in the curbstone, there might be some merit to this last cross claim since the plaintiff would then have been forced to traverse the street in order to reach the bus. Under such a set of facts, the failure to pull the bus to the curb could be considered a proximate cause for the plaintiff's fall. However, on the state of facts as presented, it is of no significance that the bus did not pull to the curb since the plaintiff would necessarily have to pass over the curbstone depression to reach the bus, no matter where it be stopped.

In closing, a comment should be made upon the fact that Justice EVANS struck that portion of the proposed order as sought the dismissal of all cross claims against the Transit

Authority. Concededly, the original motion was only addressed to the action in chief. Therefore, Justice EVANS only signed an order dismissing the action in chief against the Transit Authority. The instant dispute centers upon the effect of that order upon the continued viability of the cross claims.

Accordingly, the order of the Supreme Court, New York County (ASCH, J.), entered January 9, 1978, denying the Transit Authority's motion for summary judgment dismissing all cross claims as against it, should be reversed, on the law, and the motion should be granted, without costs.

LUPIANO and FEIN, JJ., concur with SANDLER, J., in separate opinions; MURPHY, P. J., and SULLIVAN, J., dissent in an opinion by MURPHY, P. J.

Order, Supreme Court, New York County, entered on January 9, 1978, affirmed, without costs and without disbursements.